SCOTT J. SAGARIA (BAR # 217981)
ELLIOT W. GALE (BAR #263326)
JOE B. ANGELO (BAR #268542)
SCOTT M. JOHNSON (BAR #287182)
**SAGARIA LAW, P.C.**
3017 Douglas Blvd., Ste. 100
Roseville, CA 95661
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

|  |  |
|---|---|
| **RICHARD PERSONS,**<br><br>                    Plaintiff,<br><br>          v.<br><br>Equifax, Inc.; Safe Credit Union and DOES 1 through 100 inclusive**,**<br><br>                    Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES:<br><br>1.  Violation of Fair Credit Reporting Act<br>2.  Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Richard Persons, an individual, based on information and belief, to allege as follows:

## **INTRODUCTION**

1.  This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), 15 U.S.C. § 1681i(a)(5)(A)) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).  Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate,

misleading, or incomplete reporting of Plaintiff's debt included in Plaintiff's Chapter 7 bankruptcy.

2. Specifically, Defendant Safe Credit Union continued to inaccurately report the status of Plaintiff's account as reflecting Plaintiff was late or past due on his payments despite plaintiff listing the account and receiving his **discharge**.

3. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

4. The *majority* of consumer Debtors who file consumer bankruptcy do so to *raise* their FICO Score and remedy their poor credit worthiness.

5. It is entirely possible for consumer Debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

6. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

7. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely report accounts discharged in bankruptcy inaccurately to perpetuate this myth and keep scores low.

8. This was not the intent of Congress when enacting the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

10. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and 28 U.S.C §1391(C)(2). Plaintiff alleges that each individual defendant resides in the forum state and this Court has personal jurisdiction over Equifax.

**<u>GENERAL ALLEGATIONS</u>**

12. Plaintiff alleges that Safe was included in Plaintiff's Chapter 7 bankruptcy filing in that each debt occurred pre-petition and was discharged in Plaintiff's bankruptcy.

13. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

14. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendants reported in accordance with the recognized industry standard.

15. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's fresh start via a Chapter 7 discharge.

16. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

**FICO, Inc.**

17. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

18. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

19. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

20. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

21. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

22. There are 28 FICO Scores that are commonly used by lenders.

23. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

24. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

25. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

26. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

27. Each of the five factors is weighted differently by FICO.

28. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

29. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

30. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

31. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

32. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

33. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

### Metro 2

34. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

35. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

36. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

37. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

38. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:

    a. The CDIA offers a FCRA certificate program for all CRAs.

    b. The CDIA offers a FCRA awareness program for all CRAs.

    c. The CDIA offers a FCRA Certificate program for DFs.

    d. The CDIA offers a FCRA awareness program for DFs.

    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f.   The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

g.   The CDIA developed a credit reporting resource guide for accurately reporting credit.

39. The CDIA's Metro 2 is accepted by all CRAs.

40. The credit reporting accepted industry standards for reporting metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

41. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

42. The CRRG is not readily available to the public. It can be purchased online for $229.45.

43. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

44. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

45. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

46. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**e-OSCAR**

47. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

48. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

49. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**Plaintiffs Bankruptcy Filing**

50. Plaintiff filed for Chapter 7 bankruptcy protection on May 27, 2016 in order to repair Plaintiff's credit worthiness and FICO Score.

51. Plaintiff's bankruptcy was **discharged on September 12, 2016**.

52. On December 29, 2016 Plaintiff ordered credit reports from Experian Information Solutions, Inc.; Equifax, Inc. and TransUnion, LLC to ensure proper reporting by Plaintiff's Creditors after the entry of his bankruptcy discharge.

53. Plaintiff noticed one different trade lines on the December 29, 2016 credit report all reporting inaccurate, misleading, or incomplete information that did not comport with credit reporting industry standards.

54. Safe Credit Union's ("Safe")  account beginning #2914 was the account. Defendant Safe reported the status of the account as past due and made no reference to Plaintiff's BK filing.

55. In response, Plaintiff disputed the inaccurate tradeline  via certified mail with Experian Information Solutions, Inc.; Equifax, Inc.; and TransUnion, LLC on February 9, 2017.

56. Plaintiff's dispute letter specifically put Safe on notice that Plaintiff had filed for bankruptcy and that the account was not reporting the bankruptcy correctly and requested it refer to the CDIA guidelines on how to report the debt.

57. Plaintiff noted that he expected the account to be reported disputed if Safe disagreed with Plaintiff's dispute.

58. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.

59. On March 23, 2017 Plaintiff ordered a second three bureau credit report from Experian Information Solutions, Inc.; Equifax, Inc. and TransUnion, LLC to ensure Plaintiff's accounts had been updated.

60. Defendant Safe still reported to Equifax, Inc. that Plaintiff's account, beginning in 2914xxxx was "Late 30 Days," and made no reference to Plaintiff's BK.

61. Defendant Safe had still refused to update the Equifax, Inc. report to show the account as discharged in bankruptcy and instead, the account continued to report that Plaintiff was late in making his payments.

62. Post-discharge Safe continued to report that Plaintiff was late on payments despite Plaintiff receiving a discharge.

63. Plaintiff alleges that Defendant Safe did not investigate whether Plaintiff filed for bankruptcy.

64. Defendant Safe did not update the trade line to reflect that Plaintiff filed for chapter 7 protection and subsequently received a chapter 7 discharge.

65. The Credit Reporting Agencies provided notice to Safe that Plaintiff was disputing the inaccurate and misleading information, but Safe failed to conduct a reasonable investigation of the information, as required by the Fair Credit Reporting Act.

66. Based on Plaintiff's dispute, Safe should have known that Plaintiff filed for Chapter 7 bankruptcy and that it would be legally impossible for Plaintiff to be 30 days late on a prepetition debt post discharge.

67. The most basic investigation would include a simple review of well-established credit reporting industry standards on how to report a bankruptcy.

68. Plaintiff alleges that Safe did not review well established industry standards for credit reporting.

69. If Safe had reviewed such standards, Safe would have seen that its reporting was not in compliance and consequentially inaccurate or incomplete.

70. Defendant Safe should have updated the CII to E to reflect the debt was discharged in Plaintiff's chapter 7 bankruptcy or at the very least remove the 30 day late notation.

71. Instead, Safe's current reporting indicates that Plaintiff remains derelict on this account and has not addressed the issue.

72. The lack of investigation is unreasonable.

**Damages**

73. Plaintiff pulled the credit report at issue at a cost of $39.95, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

74. The inaccurate information has also been disbursed to multiple lenders through hard and soft inquires:

1) EMS on November 10, 2016

2) Chase Card on October 6, 2016

75. As a result of the incorrect reporting, Plaintiff has also suffered, diminished credit, emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code and the power of this Court to preserve and perpetuate a fresh start.

76. The actions of Defendants Equifax, Inc. and Safe as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

77. The actions of the Defendant Safe as alleged herein are acts in violation of the Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Equifax, Inc. – Failure to Assure Credit Reporting Accuracy.**

78. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

79. Equifax, Inc. violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

80. Had Equifax, Inc. maintained reasonable procedures to assure maximum accuracy Experian Information Solutions, Inc. would never have allowed Defendant Safe to report the account as described herein.

81. As a result of Equifax, Inc.'s violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

82. The violations described herein by Equifax, Inc. were willful, specifically the Credit Bureaus including Defendant Equifax, Inc. have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

83. Equifax, Inc. intentionally sends consumer disputes to employees who do not live within the continental United States.

84. This is intentionally done to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

85. These employees for Defendant Equifax, Inc. receive little to know training concerning how to accurately report consumer debt.

86. Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate.

87. Equifax, Inc. employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

88. Equifax, Inc. has intentionally setup this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

89. As a result of Equifax, Inc.'s violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit,  damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

90. The violations by Equifax, Inc. were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

91. In the alternative, Equifax, Inc. was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

92. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Inc. in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**Safe –Failure to Reinvestigate.**

93. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

94. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and

requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

95. Defendant Safe violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

96. Equifax, Inc. provided notice to Safe that Plaintiff was disputing the inaccurate and misleading information but Safe failed to conduct a reasonable investigation of the information as required by the FCRA.

97. Based on Plaintiff's dispute, Safe should have known their accounts were included in Plaintiff's Chapter 7 bankruptcy.

98. Such an investigation would be unreasonable.

99. The lack of investigation is unreasonable.

**Willfulness**

100. Plaintiff further alleges that Safe has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

101. Rather than investigate disputes Safe as a policy simply rubber stamps reporting as accurate without investigating the disputes.

102. In the alternative Plaintiff alleges that to the extent updates are made such updates are generally guess work rather than the result of an investigation.

**Equifax, Inc. – Failure to Reinvestigate Disputed Information. 15 USC 1681i-(a)1**

103. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

104. After Plaintiff disputed the accounts mentioned above, Equifax, Inc. was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

105. Equifax, Inc. failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

106. Plaintiff alleges that each CRA has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.

107. Equifax, Inc. is not a passive entity bound to report whatever information a DF provides.

108. Plaintiff alleges that Equifax, Inc. is readily familiar with Metro 2 guidelines and credit reporting industry standards.

109. Given the aforementioned, Plaintiff alleges that Equifax, Inc. can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

110. Equifax, Inc. can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

111. Equifax, Inc. failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not reporting the account at issue correctly.

112. Equifax, Inc., therefore, did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(2)(A))
Against Defendants and Does 1-100)

**Equifax, Inc. – Failure to Send Dispute.**

113. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

114. Equifax, Inc. violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide Safe with all the relevant information regarding Plaintiff's disputes.

115. As a result of Equifax, Inc.'s violation of 15 U.S.C. § 1681i(a)(2)(A), Plaintiff suffered actual damages, including but not limited to: diminished credit,  damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

116. The violations by Equifax, Inc. were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  Specifically, as a policy Equifax, Inc. simply doesn't send all disputes received but instead ignores consumer disputes.

117. In the alternative, Equifax, Inc. was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

118. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Inc. in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Equifax, Inc. – Failure to Review and Consider All Relevant Information.**

119. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

120. Equifax, Inc. violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

121. As a result of Equifax, Inc.'s violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to: diminished credit,  damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

122. The violations by Equifax, Inc. were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

123. In the alternative, Equifax, Inc. was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

124. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Inc. in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FIFTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Equifax, Inc. – Failure to Delete Disputed and Inaccurate Information.**

125. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

126. Equifax, Inc. violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the dispute inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

127. As a result of Equifax, Inc.'s violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

128. The violations by Equifax, Inc. were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

129. In the alternative, Equifax, Inc. was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

130. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Inc. in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### SIXTH CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants and Does 1-100)

**Safe – Reporting Inaccurate Information to CRAs.**

131. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

132. In the regular course of its business operations, Safe routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

133. Safe intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comport with well-established industry standards.

134. Plaintiff alleges that Safe re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

135. Plaintiff also alleges that Safe had reason to know that the information reported on Plaintiff's accounts were misleading, inaccurate, incomplete, and did not comport with well-established credit reporting industry standards.

136. Plaintiff alleges that Safe had reason to know that by not comporting with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

137. Plaintiff alleges that the bankruptcy notices, disputes letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to Safe of its misleading and inaccurate reporting as well as being noticed of the plan confirmation and proof of claim forms sent by the U.S. Bankruptcy Court.

138. Safe failed to notify Equifax, Inc. that the information Defendant Safe re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

139. Safe's communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

140. As a direct and proximate result of Safe's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to inability to properly reorganize under Chapter 13, reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;

3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;

5. For determination by the Court that Creditor's policies and practices are

unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**SAGARIA LAW, P.C.**

Dated: May 23, 2017                    _/s/ Elliot Gale, Esq._
                                        Scott Sagaria, Esq.
                                        Elliot Gale, Esq.
                                        Attorneys for Plaintiff

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial of this matter by jury.

**SAGARIA LAW, P.C.**

Dated: May 23, 2017                    _/s/ Elliot Gale, Esq._
                                        Scott Sagaria, Esq.
                                        Elliot Gale, Esq.

                                        Attorneys for Plaintiff